THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACK FOR WHALES, INC., a Massachusetts non-profit corporation, P.O. Box 3057, Nantucket, MA 02584; VALLORIE OLIVER, a resident of Massachusetts, 3B Newtown Road, Nantucket, MA 02554; AMY DISIBIO, a Massachusetts homeowner, 4 Masaquet Avenue, Nantucket, MA 02554;; VERONICA BONNET, a Massachusetts homeowner, 15 Shimmo Pond Road, Nantucket, MA 02554; DANNY PRONK, a resident of Massachusetts, 40 Vesper Lane, Nantucket, MA 02554; and, WILLIAM VANDERHOOP, a resident of Massachusetts, P.O. Box 83, 12 Old South Road, Aquinnah, MA 02535;<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT, 1849 C Street NW, Washington, DC 20240; MATTHEW GIACONA, in his official capacity as the Director of the Bureau of Ocean Energy Management, 1849 C Street NW, Washington, DC 20240; US DEPARTMENT OF INTERIOR, 1849 C Street NW, Washington, DC 20240; DOUG BURGUM, in his official capacity as the Secretary of the Interior, 1849 C Street NW, Washington, DC 20240,<br><br>*Defendants* | Case No.<br><br>Judge |

1

**Complaint For Declaratory and Injunctive Relief To Set Aside Final Agency Action**

Plaintiffs ACK FOR WHALES, INC., VALLORIE OLIVER, AMY DISIBIO, VERONICA BONNET, DANNY PRONK, and, WILLIAM VANDERHOOP, ("Plaintiffs") by its attorney file this Complaint against Defendants Bureau of Ocean Energy Management; Director of the Bureau of Ocean Energy Management, MATTHEW GIACONA; U.S. Department of Interior; and, DOUG BURGUM, Secretary of the Interior, and allege the following.

**Nature of the Action**

1. This is an action for declaratory and injunctive relief, challenging the failure of the Bureau of Ocean Energy Management's ("BOEM") to comply with the Outer Continental Shelf Lands Act ("OCSLA") and the Administrative Procedures Act ("APA"). Plaintiffs seek orders vacating and setting aside as unlawful the Record of Decision ("ROD") and Construction and Operations Plan ("COP")[1] sanctioning Vineyard Wind 1. BOEM is engaging in ongoing violations of OCSLA because it continues to allow Vineyard Wind 1 project to operate under approvals that

---

[1] Record of Decision Vineyard Wind 1 Offshore Wind Energy Project Construction and Operations Plan, May 10, 2021, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Final-Record-of-Decision-Vineyard-Wind-1.pdf

For completeness, Plaintiffs also challenge BOEM's January 17, 2025 final decision approving Vineyard Wind 1's COP revision for blade-removal activities pursuant to 30 C.F.R. § 585.634, which revised BOEM's July 15, 2021 COP approval and expressly remained subject to all other applicable terms and conditions from the original 2021 COP approval. BOEM's January 17, 2025 COP revision approval letter constitutes final agency action under 5 U.S.C. § 704. https://www.boem.gov/sites/default/files/documents/renewable-energy/VW1-Blade-Removal-COP-Revision-Approval-Letter.pdf

2

were issued using an interpretation of OCSLA § 8(p)(4) (43 U.S. Code § 1337(p)(4)) that the Office of the Solicitor has since withdrawn as erroneous.

2. In this suit, Plaintiffs ask this Court to invalidate the putative approvals of the Vineyard Wind 1 project until and unless the Federal Government complies with the relevant statutes and regulations.

3. In all of the allegations, *infra*, Plaintiffs incorporate by reference all contents of their Notice of Intent to Sue under the OCSLA of December 4, 2025.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal questions), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), 43 U.S.C. § 1331 et seq. (OCSLA), and 5 U.S.C. § 701 through 706 (APA).

5. Final agency decisions are subject to judicial review (here, ROD and COP approval). Plaintiffs have met all applicable statute of limitations, namely, the six-year statute of limitations, pursuant to 28 U.S.C. § 2401.

6. Pursuant to 43 USCS § 1349(a), on December 4, 2025, Plaintiffs sent a notice of intent ("NOI") to sue to BOEM over its ongoing violations of OCSLA.

7. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because all of the Federal Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Parties

8. Plaintiff ACK FOR WHALES is a 501(c)(3) non-profit corporation established to protect the natural and human resources that are threatened by BOEM's massive offshore wind

3

energy program and its component elements, including the Vineyard Wind 1 Project. The members of ACK for Whales can view the Project from various vantage points (public and private) on Nantucket. Plaintiffs Vallorie Oliver, Amy DiSibio and Veronica Bonnet own properties on Nantucket. Moreover, they frequently travel on, through, and over coastal waters that are affected by the Vineyard Wind 1 project, including waters wherein marine mammals (some of which are listed as threatened or endangered) frequent. ACK For Whales and its constituent members have ardent interests in protecting these marine mammals, including the North Atlantic Right Whale, as well as the cultural and historical heritage of Nantucket from the inimical effects of Vineyard Wind 1. For example, Plaintiff Vallorie Oliver of ACK for Whales, is suffering harm under OCSLA (see allegations infra under Plaintiff Vallorie Oliver establishing individual standing). As such, ACK for Whales and its members are and have been harmed by BOEM's failure to comply with the statutes and regulations designed to protect marine mammals, including OCSLA (and their harms fall squarely within the zone of interests of those statutes). As a direct result of the federal agencies' approvals of Vineyard Wind 1, ACK for Whales and its constituent members have been and are suffering harm under OCLSA, traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

9.     Plaintiff VALLORIE OLIVER – a founding member of ACK for Whales – is a homeowner in Nantucket and has been her entire life. She travels on and through and utilizes the waters around Nantucket. She considers it her responsibility to guard those waters and all the plant and animal life within it. She has personally observed whales and dolphins, likely including migrating Humpbacks and North Atlantic Right Whales, from the shore of Nantucket, and on occasion, while out boating on the waters surrounding Nantucket. She has concrete plans for future observances of whales and dolphins in this area near and adjacent to Nantucket. Thus, she is a

person for whom the aesthetic and recreational values of the area is and will be lessened due to BOEM's approval of Vineyard Wind 1, and particularly, by Vineyard Wind 1's pile driving/construction and operations, which negatively impact and impair Plaintiff Oliver's ability to personally observe the whales and dolphins. Additionally, she customarily frequents the beaches along Nantucket's shores. Her formerly unencumbered views of the ocean and marine life are marred further by the Vineyard Wind 1 Project, as the Project's wind turbines are clearly visible from the Nantucket shoreline. The Vineyard Wind 1 project threatens the resources that make Nantucket the idyllic place that Vallorie Oliver has chosen to call her lifelong home. Ms. Oliver is also deeply invested in the historical heritage of Nantucket, and sits as a Commissioner on the Nantucket Historic District Commission trying to protect the Island's National Historic Landmark Status, which the Vineyard Wind 1 project will invariably further damage. As a direct result of the federal agencies' approvals of Vineyard Wind 1, Plaintiff Oliver is suffering harm under OCLSA (and her harms fall squarely within the zone of interests of that statute), traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

10. Plaintiff AMY DISIBIO, a member of ACK for Whales, also owns property on Nantucket, and travels on and through and utilizes the waters around Nantucket. She considers it her responsibility to guard those waters and all the plant and animal life within it. She has personally observed whales and dolphins, likely including migrating Humpbacks and North Atlantic Right Whales, from the shore of Nantucket and on boating trips adjacent to Nantucket. She has concrete plans for future observances of whales and dolphins in this area near and adjacent to Nantucket. Thus, she is a person for whom the aesthetic and recreational values of the area has been and will be lessened due to BOEM's approval of Vineyard Wind 1, and particularly, by Vineyard Wind 1's pile driving/construction and operations, which negatively impact and impair

Plaintiff DiSibio's ability to personally observe the whales and dolphins. Additionally, she customarily frequents the beaches along Nantucket's shores. Her views of the ocean and marine life are marred further by the Vineyard Wind 1 Project, as the Project's wind turbines are clearly visible from the Nantucket shoreline, negatively impacting the pristine natural setting of thousands of acres of preserved shorelines and unobstructed views of the horizon. Ms. DiSibio has been visiting Nantucket for multiple decades. Ms. DiSibio is also deeply invested in the historical heritage of Nantucket, which the Vineyard Wind 1 project will invariably damage. As a direct result of the federal agencies' approvals of Vineyard Wind 1, Plaintiff DiSibio is suffering harm under OCLSA (and her harms fall squarely within the zone of interests of that statute), traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

11.     Plaintiff VERONICA BONNET, a member of ACK for Whales, also owns property on Nantucket, and travels on and through and utilizes the waters around Nantucket. She considers it her responsibility to guard those waters and all the plant and animal life within it. She has personally observed whales and dolphins, likely including migrating Humpbacks and North Atlantic Right Whales, from the shore of Nantucket. Ms. Bonnet regularly observes whales and dolphins from her boat in the area near and around Nantucket. She has concrete plans for future observances of whales and dolphins in this area near and adjacent to Nantucket. Thus, she is a person for whom the aesthetic and recreational values of the area is and will be lessened due to BOEM's approval of Vineyard Wind 1, and particularly, by Vineyard Wind 1's pile driving/construction and operations, which negatively impact and impair Plaintiff Bonnet's ability to personally observe the whales and dolphins. Additionally, she customarily frequents the beaches along Nantucket's shores. Her views of the ocean and marine life are marred further by the Vineyard Wind 1 Project, as the Project's wind turbines are clearly visible from the Nantucket

6

shoreline, negatively impacting the pristine natural setting of thousands of acres of preserved shorelines and unobstructed views of the horizon. Ms. Bonnet has been visiting Nantucket for over 20 years and has owned a home on Nantucket for 8 years now. Ms. Bonnet is also deeply invested in the historical heritage of Nantucket, which the Vineyard Wind 1 project will invariably damage. A favorable Court decision will redress the harm caused by Vineyard Wind 1. As a direct result of the federal agencies' approvals of Vineyard Wind 1, Plaintiff Bonnet will suffer harm under OCLSA (and her harms fall squarely within the zone of interests of that statute), traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

12. Plaintiff DANNY PRONK resides on Nantucket, and is a lobsterman by trade. He has been lobstering in the area around Nantucket for 40 years, and is being pushed out of the grounds within which he has lobstered due to the construction of turbines. The noise from all aspects of turbine preparatory work through operation have caused the animals to move, and the wind projects are impelling him and other lobstermen into areas that are scheduled to also be converted into offshore wind power plants. As such, Plaintiff Pronk is and will continue to be economically harmed by way of Vineyard Wind 1. A favorable Court decision will redress this harm caused by Vineyard Wind 1. As such, this harm confers standing for OCSLA, principally through Plaintiff Pronk's economic harm. The physical obstruction of the agency sanctioned Vineyard Wind 1 project destructively interferes and impairs Plaintiff Pronk's ability to adequately obtain lobster. As a direct result of the federal agencies' approvals of Vineyard Wind 1, Plaintiff Pronk is suffering harm under OCLSA (and his harms fall squarely within the zone of interests of that statute), traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

13. Plaintiff WILLIAM VANDERHOOP is the owner of the business Tomahawk

Charters. For 38 years, he has run his charter fishing and whale watching business in the area where Vineyard Wind 1 currently is located. Prior to owning his business, he was a swordfish fisherman for 20 years. He is also a member of the Wampanoag Tribe of Gay Head Aquinnah. His business has already been harmed by Vineyard Wind 1's construction and operations, which are substantially decreasing the available fish in the area. Plaintiff Vanderhoop has not seen anything like it (the decreased fish population) in his time there. Accordingly, he is and will continue to be economically harmed by Vineyard Wind 1, conferring standing under OCSLA. His use of the area and the fact that he relies upon this critical area for the economic success of his business renders him an archetypal OCSLA plaintiff. As a direct result of the federal agencies' approvals of Vineyard Wind 1, Plaintiff Vanderhoop is suffering harm under OCLSA (and his harms fall squarely within the zone of interests of that statute), traceable to the agencies' sanctioned activities of Vineyard Wind 1, and redressable by this Court.

14. Defendant BOEM is a federal agency within the U.S. Department of Interior, tasked with managing the "development of U.S. Outer Continental Shelf (OCS) energy, mineral, and geological resources in an environmentally and economically responsible way."[2]

15. Defendant U.S. Department of Interior is an executive department of the U.S. federal government responsible for the management and conservation of most federal lands and natural resources.

16. Defendant DOUG BURGUM is the Secretary of the Department of Interior.

17. Defendant MATTHEW GIACONA is the Director of BOEM.

---

[2] BOEM, https://www.boem.gov/about-boem

## FIRST CAUSE OF ACTION

**[Violations Of The Outer Continental Shelf Lands Act (OCSLA)—43 U.S.C. §§ 1331, Et Seq. and Administrative Procedures Act]**

18.     Plaintiffs reallege and incorporate by reference all of their previous allegations and further allege as follows:

19.     Plaintiffs submitted a Notice of Intent to Sue under OCSLA on December 4, 2025, setting forth BOEM's ongoing violations of OCSLA. That Notice of Intent to Sue was delivered to all relevant recipients in the week of December 15, 2025. Pursuant to 43 U.S.C. § 1349(a)(3), Plaintiffs are entitled to commence litigation immediately following notification if the alleged violation would immediately affect a legal interest of Plaintiffs, which is extant here. "An action may be brought under this subsection immediately after notification of the alleged violation in any case in which the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect a legal interest of the plaintiff." 43 USCS § 1349(a)(3). This is the paradigmatic case of "imminent threat to the public health or safety" within the meaning of the statute's verbiage. Recently, on December 22, 2025, Department of Interior directed[3] BOEM to suspend five disparate offshore wind projects, including Vineyard Wind 1, due to grave risks to national security.[4] As explained therein, "Based on BOEM's initial review of this classified information, the particularized harm posed by this project can only be feasibly averted by

---

[3] The Trump Administration Protects U.S. National Security by Pausing Offshore Wind Leases, December 22, 2025, https://www.doi.gov/pressreleases/trump-administration-protects-us-national-security-pausing-offshore-wind-leases

[4] Director's Order, BOEM, December 22, 2025, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/BOEM%20Vineyard%20Suspension%20Letter.pdf?VersionId=fjS0RXlwQMRGj_l1DSaZOPTpcvkP6HM

suspension of on-lease activities." This suspension order accords with the evidence cited herein, *infra*. The same radar degradation that prompted the suspension also creates imminent risks to aviation and maritime safety (including aircraft detection, see *infra*), thereby constituting an imminent threat to public safety. Furthermore, Vineyard Wind 1 continues to operate, and as such, is immediately affecting the legal rights of Plaintiffs in this case through imparting harm to them in the idiosyncratic ways described *supra*.

20.    Alternatively, Plaintiffs pursue their OCSLA claims through the APA, as BOEM's approval of Vineyard Wind 1 was arbitrary and capricious, and contrary to law, and unsupported by substantial evidence, due to the reasons set forth below (including but not limited to APA subsections, 5 U.S.C. §706(2)(A), (C), (E)).

21.    BOEM is engaging in ongoing violations of OCSLA because it continues to allow Vineyard Wind 1 project to operate under approvals that were issued using an interpretation of OCSLA § 8(p)(4) (43 U.S. Code § 1337(p)(4)) that the Office of the Solicitor has since withdrawn as erroneous.

22.    On May 1, 2025, DOI withdrew M-37067,[5] reinstated M-37059, and directed all DOI offices to reevaluate any prior action taken in reliance on M-37067. Vineyard Wind 1's COP and ROD were expressly issued under M-37067. BOEM has refused to reevaluate or suspend those approvals. M-37067 was issued one month prior to the approval of the Vineyard Wind 1 ROD/COP.

23.    Because § 8(p)(4) imposes mandatory duties on BOEM to ensure each statutory criterion is satisfied, BOEM's ongoing failure to reevaluate or suspend its approvals constitutes a

---

[5] US Department of Interior, M-37086 Memorandum, Acting Solicitor, May 1, 2025, https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf

present and continuing violation of OCSLA.

24. BOEM acknowledged, in its May 1, 2025 memorandum from the Acting Solicitor, that the correct reading of OCSLA is one that interprets the OCSLA (p)(4) criteria as mandatory, to wit, BOEM must ensure that each criterion is met in a manner that is not to the detriment of the other criteria.[6]

25. Given the prior interpretation (rationally balance the (p)(4) goals) was rescinded, BOEM is now required to apply the correct interpretation. As BOEM concedes, any "Departmental action taken in reliance on the now withdrawn M-Opinion 37067, should be reevaluated in light of this Memorandum." Id.

26. Accordingly, continuing the Vineyard Wind 1 ROD and COP, (thereby countenancing them to construct and operate) without reevaluation of the project constitutes an ongoing violation of OCSLA § 8(p)(4). When applying those mandatory criteria, it is apparent that BOEM failed to consider or inadequately considered substantial negative impacts, see *infra*. Not only is the May 2021 ROD/COP contrary to OCSLA and the APA, 5 U.S.C. §706(2), BOEM's post-May 2025 failure to reevaluate Vineyard Wind 1's approvals constitute "agency action unlawfully withheld or unreasonably delayed," in contravention of 5 U.S.C. §706(1).

27. Pursuant to 43 U.S.C. § 1337(p)(4) (§ 8(p)(4)), BOEM failed to ensure that each and every mandatory criterion is satisfied, particularly, § 8(p)(4), (D), (F), (I).

28. Pursuant to 43 U.S.C. § 1337(p)(4)(F), "protection of national security interests of the United States," BOEM has abdicated its duty to ensure that national security interests have been stewarded.

29. Vineyard Wind 1 is an offshore wind energy project located on the Outer-

---

[6] Id.

11

Continental Shelf to the south of Massachusetts, sanctioned by BOEM pursuant to a COP and ROD issued May 10, 2021.

30. Vineyard Wind 1 interferes with numerous different radar systems. BOEM enlisted Westslope Consulting to conduct radar and navigational aid screening studies for other adjacent offshore wind projects, such as Beacon Wind, a contiguous, adjacent lease area, located immediately to the southeast of Vineyard Wind 1. Beacon Wind's lease area abuts the Vineyard Wind 1 area, hence, the results from BOEM's Westslope commissioned analysis are highly probative and can be applied here.

31. BOEM did not conduct a project-specific radar line-of-sight or interference analysis for Vineyard Wind 1. Despite the project's immediate adjacency to the Beacon Wind lease area, and despite BOEM's own regional radar-interference analyses demonstrating the susceptibility of coastal and defense radar systems to offshore wind development in this region, BOEM approved Vineyard Wind 1 without ensuring that its turbines would not impair radar systems critical to national defense, aviation safety, and maritime navigation. BOEM's own best management practices clearly provide, "**Lessees and grantees shall conduct all necessary studies of potential interference of proposed wind turbine generators with commercial air traffic control radar systems, national defense radar systems, and weather radar systems, including identification of possible solutions**."[7] Yet, BOEM abdicated its duty to do precisely that for Vineyard Wind 1.

32. BOEM subjected Vineyard Wind 1 to only generalized, screening-level radar analysis and failed to conduct the project-specific line-of-sight and system-specific evaluations

---

[7] Vineyard Wind 1 Offshore Wind Energy Project Final Environmental Impact Statement Volume II, BOEM, May 2021, at A-24, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Vineyard-Wind-1-FEIS-Volume-2.pdf

that it performed for the immediately adjacent Beacon Wind project. For several radar and navigational systems, including but not limited to Terminal Doppler Weather Radar (TDWR) and Very High Frequency Omnidirectional Range/ Distance Measuring Equipment (VOR/DME), BOEM conducted no Vineyard Wind 1 analysis at all. For example, BOEM neither conducted nor commissioned a turbine-by-turbine Line of Sight (LOS) analysis or blade tip height analysis for the impact of the Cape Cod Air Force Station Early Warning Radar ballistic missile defense system with respect to Vineyard Wind 1. That omission is paradigmatic of BOEM's arbitrary and capricious national security omissions with respect to Vineyard Wind 1, and hence its failure to comply with OCSLA, 43 U.S.C. § 1337(p)(4)(F).

33. BOEM's failure to conduct a Vineyard Wind–specific analysis, in light of readily available analyses for adjacent projects and BOEM's own Atlantic OCS radar studies, constitutes a failure to consider an important aspect of the problem and violates OCSLA § 8(p)(4) and the APA.

34. Vineyard Wind 1 is situated within the direct radar line of sight of the Cape Cod Space Force Station's PAVE PAWS Early Warning Radar ("EWR") system, the sole East Coast installation providing continuous ballistic missile early warning and airspace surveillance for the United States. See the following image, courtesy of the organization, "Green Oceans" which was generated utilizing the data[8] from two maps provided by Westslope Consulting to the U.S.

---

[8] REVOLUTION WIND PROJECT RADAR AND NAVIGATIONAL AID SCREENING STUDY SEPTEMBER 3, 2021, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/App_S2%20RevWind%20Radar%20and%20Navigational%20Aid%20Screening%20Study.pdf (p. 12), MAYFLOWER WIND OFFSHORE WIND PROJECT RADAR AND NAVIGATIONAL AID SCREENING STUDY OCTOBER 15, 2020, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Appendix%20Y4_Radar%20and%20Navigational%20Aid%20Screening%20Study.pdf (p. 12)

Department of Interior (BOEM).



35.     As depicted in the above image, Vineyard Wind 1 is one of the worst offenders of any BOEM lease area south of New England. The dark yellow area denotes regions that fall within the line of sight ("LOS") of the Cape Cod EWR (denoted by the red dot), given a blade tip height of 808-873 feet. The dark grey depicts the area of significant impact considering a taller turbine (1,067 ft. blade tip height). As such, the Vineyard Wind 1 turbines could significantly disrupt Early Warning Radar and airspace surveillance.

36.     The Beacon Wind Westslope Consulting analysis identified innumerable radar systems implicated by the Beacon Wind proposed project. As noted, those results are largely applicable to Vineyard Wind 1 given the close spatial proximity in lease areas. Extrapolating the Beacon Wind Westslope analysis to Vineyard Wind 1, a substantial proportion of Vineyard Wind 1's turbines impact the Line of Sight of the following radars: Falmouth Airport Surveillance Radar

(ASR-8), Nantucket ASR-9, Cape Cod AFS EWR (ballistic missile early warning radar), Block Island Long Range High-Frequency (HF) Radar, Horseneck Beach State Reservation HF Radar, Long Point Wildlife Refuge HF Radar, Martha's Vineyard HF Radar, and the Nantucket HF Radar.[9]

37.     That analysis for Beacon Wind concluded as follows in terms of real-world impacts from the turbine induced line of sight impairments, "For the Falmouth ASR-8 and the Nantucket ASR-9, without mitigation, the radar effects due to clutter may include a partial loss of primary target detection and a number of false primary targets over and in the immediate vicinity of the proposed locations within line-of-sight. Other radar effects include a partial loss of weather detection and false weather indications over and in the immediate vicinity of the proposed locations within line-of-sight." For the HF radars, they concluded, "the radar effects may include clutter in the vicinity of the proposed locations within line-of-sight and possibly in the vicinity of the proposed locations beyond line-of-sight due to the propagation of HF electromagnetic waves over the ocean surface." And for the Cape Cod AFS EWR, the same analysis determined, "the proposed locations within line-of-sight of the Cape Cod AFS EWR could have a significant impact on this early warning radar. As such, Westslope recommends early consultation with the DoD Siting Clearinghouse . . . DoD may have concerns with the proposed locations within line-of-sight based on electromagnetic interference to a ballistic missile defense and space surveillance facility."[10]

---

[9] Beacon Wind Project Radar And Navigational Aid Screening Study November 10, 2022, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Beacon-Wind-Appendix-AA-Radar-Line-of-Sight.pdf
See figures, passim.

[10] Id. at X.

38. Given that Vineyard Wind 1 immediately abuts Beacon Wind, the results of the Beacon Wind Westslope analysis are applicable to Vineyard Wind 1. Nothing in the administrative record indicates that the physical, electromagnetic, or line-of-sight conditions materially differ between the immediately adjacent Beacon Wind and Vineyard Wind 1 lease areas. In contravention of OCSLA, no such rigorous radar and surveillance analysis was conducted for Vineyard Wind 1.

39. Notwithstanding BOEM's abdication of duty in failing to conduct a study and/or commission same for Vineyard Wind 1's turbine induced line of sight effects, the BOEM high-level screening analysis concluded that Vineyard Wind 1 interferes with 8 of the radar systems studies in that screening analysis. BOEM classified Vineyard Wind 1 as imparting a "moderate" impact See below Table E-2 below:[11]

Table ES-2. Radar Systems within LOS of Modeled Wind Farms

| Wind Farm | Number of Radar Systems within LOS | | | | |
|---|---|---|---|---|---|
| | ARSR-4 | ASR-8/9 | NEXRAD | SeaSonde | Totals |
| Skipjack | 0 | 1 | 1 | 5 | 7 |
| South Fork | 0 | 1 | 0 | 8 | 9 |
| Grand Strand | 0 | 0 | 0 | 2 | 2 |
| Mayflower | 0 | 2 | 0 | 6 | 8 |
| Vineyard Wind | 0 | 2 | 0 | 6 | 8 |
| Bay State Wind | 0 | 3 | 0 | 7 | 10 |
| Ocean Wind | 1 | 1 | 0 | 9 | 11 |
| Empire Wind | 1 | 2 | 2 | 8 | 13 |
| RI/MA Cumulative | 0 | 3 | 0 | 10 | 13 |

---

[11] Radar Interference Analysis for Renewable Energy Facilities on the Atlantic Outer Continental Shelf, OCS Study BOEM 2020-039, August 2020, https://www.boem.gov/sites/default/files/documents/environment/Radar-Interferance-Atlantic-Offshore-Wind_0.pdf

16

40. BOEM's screening analysis establishes that Vineyard Wind 1 is within the LOS of an ASR-9, ASR-8 radar, and six SeaSonde radars. While this analysis, as explained *supra*, is legally insufficient, it sets forth the following two most prominent adverse effects from the Vineyard Wind 1 radar interference: generation of false echoes in the direction of the turbines and degradation in the detections of aircraft flying in the vicinity, both of which impair and destructively interfere with national security, safety, and protection of the environment (43 U.S.C. § 1337(p)(4)(A), (B), (F)).[12]

41. There is no evidence that BOEM adequately considered the substantial safety concerns induced via Vineyard Wind 1's interference with aircraft (commercial, military, etc.), significant national security concerns, nor did they ensure the "protection of national security interests of the United States." 43 U.S.C. § 1337(p)(4)(F). Due to the withdrawn M-37067 Opinion and reinstatement of M-37059 Opinion, BOEM is obligated to ensure each of the mandatory criteria are satisfied. The approval of Vineyard Wind 1 occurred in reliance on a flawed interpretation of 43 U.S.C. § 1337(p)(4) wherein safety, protection of the environment, prevention of interference with reasonable uses, and national security interests were merely rationally balanced with the other criteria. BOEM violates OCSLA in an ongoing way by failing to take action to suspend or reconsidering Vineyard Wind 1's approvals in view of the charge of the May 2, 2025 Solicitor Memorandum and concomitant reinstatement of the M-37059 Opinion.

42. Moreover, BOEM failed to sufficiently prepare for and mitigate, blade failure events in contravention of OCSLA, 43 U.S.C. § 1337(p)(4)(A)-(D). The OCSLA implementing

---

[12] Id.

regulations at 30 CFR 585.105 provide in pertinent part: "(a) Design your projects and conduct all activities in a manner that ensures safety and will not cause undue harm or damage to natural resources, including their physical, atmospheric, and biological components to the extent practicable; and take measures to prevent unauthorized discharge of pollutants including marine trash and debris into the offshore environment."

43. There is no evidence in the ROD, COP, or other BOEM compliance filings that the Secretary has directed the project developer or otherwise taken such steps necessary to obviate the above from eventuating. As observed in the case of Vineyard Wind 1 and the concomitant blade failure incident of summer 2024 – such an event was unacknowledged by BOEM and the project developer notwithstanding extensive evidence extant regarding blade failure events. Thus, BOEM failed to comply with the aforesaid regulations due to an absence of required measures to prevent discharge of pollutants including marine trash and debris (including blades) into the offshore environment. This is thus about failure to require preventive design and mitigation. The Vineyard Wind 1 project was unequivocally not designed in a manner to prevent unauthorized discharge of pollutants into the offshore environment.

44. BOEM required oil-spill contingency planning, but did not require an enforceable incident response and debris-retrieval plan tailored to turbine blade failures, notwithstanding the foreseeable risk of blade failure and the difficulty of recovery in offshore conditions.

45. After the July 2024 blade failure demonstrated real-world debris dispersal and user conflicts, BOEM nonetheless approved the January 17, 2025 COP revision without requiring enforceable blade-failure response, debris-retrieval protocols, or operational conditions sufficient to prevent or abate recurrence.

46. To date, neither BOEM nor BSEE has issued a publicly available independent root-

cause and debris-fate assessment that identifies enforceable corrective actions and a retrieval plan sufficient to prevent ongoing harm.

47. Finally, Vineyard Wind 1 requested,[13] and BOEM approved, a departure from the requirements of 30 C.F.R. § 585.516(a)(3), which thereby countenanced Vineyard Wind 1 to defer their decommissioning financial assurance until 15 years subsequent to the completion of construction.

48. BOEM's reasoning for this departure was, in pertinent part, that "this departure is necessary to facilitate appropriate activities on lease OCS-A-0501 because it would reduce Vineyard Wind 1's upfront financial assurance burden, thereby facilitating the project's financing process and enabling Vineyard Wind 1 to commence operations more quickly than if the departure were not granted."[14] But this ostensibly violates OCSLA Section 8 (p)(4), in consideration of the mandatory criteria, and moreover, contravenes the criteria of 30 C.F.R. § 585.103(b)(1)-(4).

49. 30 C.F.R. § 585.103(b)(1)-(4) provides in pertinent part that any departure approved must "Be consistent with subsection 8(p) of the OCS Lands Act" and "Protect the environment and the public health and safety to the same degree as if there was no approved departure from this part."

50. Yet the fact that BOEM cites reduction of Vineyard Wind 1's financial burden as its justification for the departure directly belies and contravenes the criteria of 30 C.F.R. § 585.103(b)(1)-(4). Reducing a developer's financing burden is not a permissible basis for a departure that must protect public health and the environment to the same degree.

---

[13] US Department of Interior, financial assurance regulatory departure, June 15, 2021, https://www.boem.gov/sites/default/files/documents/renewable-energy/3779_FINAL_Approval%20Letter.pdf

[14] Id.

51. Therefore, BOEM's approval of the departure was an arbitrary and capricious determination in violation of OCSLA.

**PRAYER FOR RELIEF**

52. Plaintiffs ask the Court for the following relief:

53. An order holding unlawful, vacating, and setting aside Defendants' May 2021, decision approving the Record of Decision and Construction and Operations Plan for the Vineyard Wind 1 project (and the amended COP of January 17, 2025), as arbitrary, capricious, and otherwise not in accordance with law;

54. In the alternative, remand the Vineyard Wind 1 ROD and COP to BOEM for reconsideration consistent with OCLSA § 8(p)(4) (43 U.S. Code § 1337(p)(4)) and the correct interpretation (M-37086 Memorandum, May 1, 2025)).

55. Reasonable attorneys' fees and costs for bringing this suit; and,

56. Such other and further relief as the Court deems appropriate.


Dated: January 9, 2026
Respectfully submitted,

*/s/ Thomas Stavola Jr. Esq.*
Thomas Stavola Jr. Esq.
DC Bar ID number: 90015331
Law Office of Thomas Stavola Jr. LLC
209 County Road 537
Colts Neck, NJ 07722
tstavolajr@stavolalaw.com
732-539-7244


*Counsel for Plaintiffs*