**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, INC. *et al.*, | |
| *Plaintiffs*, | Civil Action No. 1:26-cv-00070 |
| v. | Hon. Tanya S. Chutkan |
| BUREAU OF OCEAN ENERGY MANAGEMENT *et al.*, | |
| *Defendants*. | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-
DEFENDANT VINEYARD WIND 1 LLC'S MOTION TO TRANSFER VENUE**

Intervenor-Defendant Vineyard Wind 1 LLC ("Vineyard Wind") hereby submits this Statement of Points and Authorities in Support of its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

This case marks the fifth attempt to strip Vineyard Wind of its duly issued permits to construct and operate an offshore wind energy project fourteen miles off the Massachusetts coast (the "Project"). Each of the prior lawsuits was litigated in the District of Massachusetts and reviewed on appeal by the First Circuit. And each of those challenges failed.

Hoping to try their luck elsewhere, the Plaintiffs—many of whom were parties to those earlier suits and reside in Massachusetts—bring their latest attack on the Project here in the U.S. District Court for the District of Columbia. But this District has relatively little meaningful connection to the controversy: the Project is located in and off the coast of Massachusetts, the Project will provide power to Massachusetts electric utilities under contracts approved by the Massachusetts Department of Public Utilities, and all of the Plaintiffs' alleged injuries are felt exclusively in Massachusetts and its surrounding waters. Moreover, this case raises issues that are *currently* being litigated in the District of Massachusetts in a case between Vineyard Wind and the federal agencies that the Plaintiffs have named as defendants here. Indeed, the court in Massachusetts recently granted Vineyard Wind's motion to stay a December 22, 2025 Order by the Bureau of Ocean Energy Management ("BOEM") suspending construction of the Project—an order that is cited in the Plaintiffs' complaint and that presents many of the same factual and legal issues raised here.

By contrast, the only asserted tie to this District is the unremarkable fact that the U.S. Department of the Interior ("Interior") and BOEM—like nearly all federal agencies—are based in

the District of Columbia. Courts in this District have repeatedly held that nexus is insufficient to anchor venue in this Court, particularly where, as here, plaintiffs depart their home forum in search of a more favorable one.

The federal transfer-of-venue statute, 28 U.S.C. § 1404(a), exists to prevent precisely this sort of forum shopping and to ensure that litigation proceeds in the forum with the strongest factual and practical nexus to the controversy. Because both the challenged Project and all Plaintiffs are based in Massachusetts, Massachusetts is the clear center of gravity of this dispute. For that reason, and because the relevant case-specific factors overwhelmingly favor that forum, the Court should grant Vineyard Wind's motion and transfer this action to the District of Massachusetts.

## BACKGROUND

### A.    The Vineyard Wind Project

Vineyard Wind's Project is located off the coast of Massachusetts, approximately 14 nautical miles south of Martha's Vineyard and Nantucket Island. *See Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 675 F. Supp. 3d 28, 41 (D. Mass. 2023), *aff'd*, 100 F.4th 1 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 1050 (2025). Vineyard Wind is constructing and operating the Project on BOEM Lease Area OCS-A 0501, a federal lease that Vineyard Wind acquired at a competitive lease auction held by BOEM in January 2015. *Id.* at 36.

After acquiring the lease, Vineyard Wind spent hundreds of millions of dollars to secure approval of its construction and operations plan ("COP") through a years-long process that involved extensive consultation with BOEM and other federal agencies, multiple rounds of public notice and comment, and a detailed review of the Project under the Outer Continental Shelf Lands Act ("OCSLA") and other federal statutes, including the National Environmental Policy Act, the Endangered Species Act, the Marine Mammal Protection Act, the Clean Water Act, and the Rivers and Harbors Act. *See Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, 2023 WL 6218159, at

*2–8 (D. Mass. Sept. 25, 2023) (describing extensive multi-agency review of the Project). As part of that review, BOEM held public hearings in several Massachusetts towns near the Project. *See* 84 Fed. Reg. 2925 (Feb. 8, 2019) (announcing public hearings in New Bedford, Hyannis, Nantucket, and Vineyard Haven). An attorney for Plaintiff ACK for Whales (then called Nantucket Residents Against Turbines) spoke at the hearing in Nantucket. *See* Ex. 1 (statement of David Hubbard).

On May 10, 2021, BOEM—in coordination with the National Marine Fisheries Service, the National Oceanic and Atmospheric Administration, and the U.S. Army Corps of Engineers— issued a joint Record of Decision memorializing the agencies' decisions to approve the Project. *Nantucket Residents*, 675 F. Supp. 3d at 41. BOEM concluded that the Project satisfied the requirements of OCSLA, 43 U.S.C. § 1337(p)(4)(F), and all implementing regulations, and, on July 15, 2021, issued its final approval of the COP. *Id.*

In reliance on the federal approvals—and the agencies' defense of those approvals in court—Vineyard Wind began construction of the Project in November 2021. Declaration of Klaus Moeller ¶ 4, ECF No. 6-2. Construction of the Project is near complete and the Project has been producing power for the New England electric grid for more than a year. *Id.* ¶ 12. Once fully operational, the Project will have a capacity of 800 MW, enough electricity to power approximately 400,000 homes. *Id.* ¶ 4.

### B.    The Prior Litigation in the District of Massachusetts

Following approval of the COP, multiple parties—including many Plaintiffs in this case— filed suits contesting the federal authorizations for the Project. Two actions (including the Plaintiffs' prior case) were filed in the District of Massachusetts; the other two were originally filed in the District of Columbia and later transferred to Massachusetts. *See Seafreeze Shoreside,*

*Inc. v. U.S. Dep't of Interior*, 2022 WL 3906934 (D.D.C. June 27, 2022) (consolidated action). In each case, the district court granted summary judgment to the agency defendants and Vineyard Wind, and the First Circuit affirmed. *See Nantucket Residents*, 675 F. Supp. 3d 28, *aff'd*, 100 F.4th 1, *cert. denied*, 145 S. Ct. 1050; *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, 2023 WL 6691015 (D. Mass. Oct. 12, 2023) (consolidated action), *aff'd*, 123 F.4th 1 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2681 (2025); *Melone v. Coit*, 2023 WL 5002764 (D. Mass. Aug. 4, 2023), *aff'd*, 100 F.4th 21 (1st Cir. 2024).

## C.    The Stop-Work Order

On December 22, 2025, BOEM issued stop-work orders directing Vineyard Wind and four other offshore wind energy projects to halt construction activities. BOEM's order directed to Vineyard Wind (the "Order") suspended "all ongoing activities related to the Vineyard Wind 1 Project on the Outer Continental Shelf for 90 days" (and potentially longer) for vague and undefined "reasons of national security."[1] At the same time, the Order allowed Vineyard Wind to "perform any activities that are necessary to respond to emergency situations and/or to prevent impacts to health, safety, and the environment over the next 90 days and during any subsequent extensions," and to "continue any activities from those wind turbines that are necessary for the current level of power generation." *Id.*

The Order contradicted BOEM's prior findings—made after extensive consultation with the Department of Defense—that the Project will not threaten national security. Believing the Order to be arbitrary and capricious and to violate due process, OCSLA, and the Administrative Procedure Act, Vineyard Wind sued BOEM and Interior in the District of Massachusetts and

---

[1] Bureau of Ocean Energy Mgmt., U.S. Dep't of Interior, Director's Order to Vineyard Wind 1 LLC (Dec. 22, 2025), https://www.boem.gov/renewable-energy/state-activities/boem-vineyard-suspension-letter.

4

sought to have the Order stayed, enjoined, or vacated. On January 27, 2026, the district court stayed the Order, finding that Vineyard Wind is likely to succeed on its claim that the Order is arbitrary and capricious, that it is likely to cause irreparable harm to Vineyard Wind, and that the public interest favors a stay. Electronic Order Granting in Part Pls.' Mot. for Prelim. Inj., *Vineyard Wind 1 LLC v. U.S. Dep't of Interior*, No. 26-cv-10156 (D. Mass. Jan. 27, 2026), ECF No. 71. That case is currently stayed. *See* Tr. of Status Conference at 4:21–22, *Vineyard Wind 1 LLC v. U.S. Dep't of Interior*, No. 26-cv-10156 (D. Mass. May 30, 2026), ECF No. 101 (granting stay "for a period of 90 days").

### D.     The Present Litigation

On January 9, 2026, the Plaintiffs sued BOEM, Interior, and their respective agency heads in this Court, alleging that BOEM's approval of the COP was arbitrary, capricious, and not in accordance with OCSLA. *See* Compl., ECF No. 1. The Plaintiffs—five individuals and an association formed to oppose the development of Vineyard Wind's Project—all have substantial ties to Massachusetts: they reside there, own property there, and/or operate businesses there. *See id.* ¶¶ 8–13. Additionally, all harms they allege, ranging from purported environmental and aesthetic impacts to claimed economic effects, are tied exclusively to the Project's construction and operation in and off the coast of Massachusetts. *See id.* In short, both the challenged agency action and the alleged consequences of that action are centered in the Commonwealth.

Nevertheless, the Plaintiffs chose to bring this latest challenge to Vineyard Wind's Project here in the District of Columbia. On June 4, 2026, this Court allowed Vineyard Wind to intervene in this action to defend the COP approval that authorizes it to construct and operate the Project. *See* Minute Order Granting Mot. to Intervene, *ACK for Whales, Inc. v. Bureau of Ocean Energy*

*Mgmt.*, No. 26-cv-00070 (D.D.C. June 4, 2026). Vineyard Wind now seeks transfer of this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Pursuant to Section 1404(a), district courts retain broad discretion to transfer a case to another venue "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Courts in this Circuit follow a two-step framework in reviewing a motion to transfer venue. *First*, the court must assess whether "the plaintiff originally could have brought the action in the proposed transferee district." *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 92 (D.D.C. 2005) (citing *Van Dusen*, 376 U.S. at 622). *Second*, the court weighs a number of "case-specific" private- and public-interest factors to determine whether the transferee court provides a more appropriate forum. *Stewart Org.*, 487 U.S. at 29. The relevant private-interest factors are:

> (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.

*Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). The public-interest considerations are:

> (1) the local interest in having controversies decided "at home," (2) the transferee's familiarity with the parties, facts, and governing law, and (3) the relative congestion of the transferee and transferor's dockets.

*Alaska Indus. Dev. & Export Auth.*, 2024 WL 756602, at *3 (D.D.C. Feb. 23, 2024) (quoting *Trout Unlimited*, 944 F. Supp. at 16). Where the balance of these "considerations of convenience and the interest of justice weigh in favor of transfer," the district should grant the motion. *Brannen*, 403 F. Supp. 2d at 92.

## ANALYSIS

### I.     The Plaintiffs Could Have Brought this Action in the District of Massachusetts.

There is no serious dispute that this case could have been filed in the District of Massachusetts. In general, a civil action against an "agency of the United States" or an officer of a federal agency "acting in his official capacity" may be brought in any judicial district where:

> (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, *or* (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1) (emphasis added). If a forum meets even one of these conditions, venue may lie there. *See Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 53–54. Here, Massachusetts satisfies that standard twice over.

First, "a substantial part of the events" underlying the Plaintiffs' claims occurred there. The Complaint challenges BOEM's approval of the Vineyard Wind Project, which is located fourteen miles off the Massachusetts coast and, when completed, will be capable of delivering approximately 800 MW of electricity to the Massachusetts grid through export cables that make landfall in Barnstable, Massachusetts. Moeller Decl. ¶¶ 4–5. The Plaintiffs' alleged injuries all flow from activities occurring in or immediately offshore of Massachusetts and are exclusively felt there. Compl. ¶¶ 8–13; *see Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 4 (D.D.C. 2013) (finding venue proper in Massachusetts where alleged injury occurred in the "waters off the Bay State's coast"). These strong ties to Massachusetts alone are sufficient to establish venue in the District of

7

Massachusetts under 28 U.S.C. § 1391(e)(1)(B). *See Seafreeze*, 2022 WL 3906934, at \*3; *Oceana*, 58 F. Supp. 3d at 4.

Second, at least two of the Plaintiffs "reside[ ]" in the District of Massachusetts. 28 U.S.C. § 1391(e)(1)(C). Plaintiff Danny Pronk resides in Nantucket. Compl. ¶ 12.[2] And ACK for Whales is a Massachusetts resident because its "principal place of business" is in Nantucket. *Virts v. Prudential Life Ins. Co. of Am*, 950 F. Supp. 2d 101, 105 (D.D.C. 2013) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)); *see* Ex. 2 at 2 (listing a Massachusetts address).[3] These Plaintiffs' Massachusetts residency forecloses all Plaintiffs' ability to contest venue in the District of Massachusetts. *See, e.g.*, *Favereau v. United States*, 44 F. Supp. 2d 68, 70 (D. Me. 1999) ("[I]n multiple plaintiff cases under the federal question venue provision § 1391(e), venue is satisfied where at least one plaintiff resides in the judicial district.").

Massachusetts is also a proper forum under OCSLA's venue provision, which specifically authorizes suit in any district where a defendant "resides or may be found," or in the district nearest to where "the cause of action arose." 43 U.S.C. § 1349(b)(1). Because the Plaintiffs' claims arose in and off the coast of Massachusetts, and because Vineyard Wind and federal-agency defendants "may be found" in that district, Massachusetts qualifies as an appropriate venue. *Super Oil Co. v. Andrus*, 656 F.2d 33, 41 (3d Cir. 1981) ("[T]here is no judicial district in which the United States may not be found in an OCSLA proceeding."); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (a business entity may "be found" where it is doing business).

---

[2] The other Plaintiffs may also be Massachusetts residents. William Vanderhoop owns a business on Martha's Vineyard; and Vallorie Oliver, Veronica Bonnet, and Amy DiSibio each own property on Nantucket. Compl. ¶¶ 9–11 & 13.

[3] A district court may take judicial notice of a public tax filing. *See, e.g.*, *Africare, Inc. v. Xerox Complete Doc. Sols. Md., LLC*, 436 F. Supp. 3d 17, 44 n.21 (D.D.C. 2020); *Vallejo Ent. LLC v. SBA*, 2025 WL 3687616, at \*3 n.1 (D.D.C. Dec. 19, 2025); *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

The District of Massachusetts thus satisfies Section 1404(a)'s threshold requirement for transfer because venue is appropriate there. S*ee Niagara Pres. Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 103 (D.D.C. 2013).

## II.    The Public- and Private-Interest Factors Strongly Support Transfer to the District of Massachusetts.

The relevant case-specific factors point to a single forum: the District of Massachusetts. The private-interest factors establish that Massachusetts is the clear locus of the operative facts, the alleged injuries, and the parties themselves. The Plaintiffs' decision to sue in a district disconnected from both their residence and the challenged Project warrants little deference. The public-interest factors also strongly favor transfer, given the District of Massachusetts's substantial experience with related litigation, its familiarity with the governing issues, and the Commonwealth's strong interest in a Project located in its coastal waters. In light of the overwhelming weight of the factors, the Court should order transfer.

### A.    Private-Interest Factors 1, 2 & 3: The Parties' Choices of Forum and the Locus of the Cause of Action

The first three private-interest factors weigh a plaintiff's choice of forum against the defendant's proposed transfer venue, as well as the locus of the operative facts underlying the claim. *S. Utah Wilderness All. v. Norton*, 2002 WL 32617198, at *3–4 (D.D.C. June 28, 2002); *Brannen*, 403 F. Supp. 2d at 92. On that score, the District of Massachusetts plainly prevails.

Although a plaintiff's choice of forum may merit deference in certain circumstances, *see, e.g.*, *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 95 n.3 (D.D.C. 2009) (explaining deference has "greater applicability to motions to dismiss for forum non conveniens"), that deference is weakened when a plaintiff files outside his "home forum," and even more so when the chosen forum "has no meaningful ties to the controversy," *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 268 (D.D.C. 2011)). So too here.

9

None of the Plaintiffs is a resident of the District of Columbia, *see* Compl. ¶¶ 8–13, so "substantially less deference is warranted" to their decision to sue in this Court and outside their home district, *Niagara Pres. Coal.*, 956 F. Supp. 2d at 104 (citing *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000); and *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 (D.D.C. 1996)). The Plaintiffs' claims also bear no ties to the District of Columbia beyond the truism that the federal Defendants are based in the seat of the federal government. But "[n]aming a cabinet secretary or a federal agency does not alone anchor venue here," *Intrepid Potash*, 669 F. Supp. 2d at 95, and "[m]ere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative," *Stockbridge–Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 47 (D.D.C. 2009). The Plaintiffs have not demonstrated any "'substantial personalized involvement by a member of the' [federal] agency" that would allow "the Court to conclude that there exist meaningful ties to the District [of Columbia]." *Niagara Pres. Coal.*, 956 F. Supp. 2d at 105 (quoting *S. Utah Wilderness All.*, 2002 WL 32617198, at *3). Nor could they, as the permits challenged here were issued in 2021—over three years *before* any of the federal officials sued here even took office. *See S. Utah Wilderness All.*, 2002 WL 32617198, at *3 (finding insufficient "personalized involvement" of federal defendants where challenged "actions were taken entirely by" other officials). Accordingly, this case's "insubstantial factual nexus" with the District of Columbia markedly undercuts the deference due to the Plaintiffs' choice of forum. *Hawksbill Sea Turtle*, 939 F. Supp. at 3.

Conversely, the District of Massachusetts bears a strong connection to the facts of this case. For starters, the Plaintiffs—who are all Massachusetts residents, property owners, or business owners, *see* Compl. ¶¶ 8–13—have "substantial ties" to the transfer forum, eviscerating any presumption favoring the Plaintiffs' preferred venue. *Trout Unlimited*, 944 F. Supp. at 17; *see also*

10

*Citizen Advocs. for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983) ("[A defendant's] burden [to justify transfer] is substantially diminished where . . . transfer is sought to the forum where plaintiffs reside[.]").

The District of Massachusetts is also well acquainted with litigation against the Vineyard Wind Project. *Four* lawsuits challenging the Project—including two transferred from this district, *see Seafreeze*, 2022 WL 3906934 (consolidated action), and another featuring many of the same Plaintiffs suing here, *see Nantucket Residents*, 675 F. Supp. 3d 28—have already been litigated to final judgment by the District of Massachusetts and the First Circuit. *See Melone*, 2023 WL 5002764, *aff'd*, 100 F.4th 21; *Seafreeze*, 2023 WL 6691015 (consolidated action), *aff'd*, 123 F.4th 1, *cert. denied*, 145 S. Ct. 2681; *Nantucket Residents*, 675 F. Supp. 3d 28, *aff'd*, 100 F.4th 1, *cert. denied*, 145 S. Ct. 1050. Transfer to Massachusetts thus effectuates the longstanding "'principle . . . to avoid duplicative litigation' between federal district courts," *Wise v. United States*, 128 F. Supp. 3d 311, 317 (D.D.C. 2015) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), and promotes the attainment of "consistent results" across cases dealing with identical subject matter, *Seafreeze*, 2022 WL 3906934, at *7 (quoting *ITT World Commc'ns, Inc. v. FCC*, 621 F.2d 1201, 1208 (2d Cir. 1980)).

Vineyard Wind is also currently engaged in litigation in the District of Massachusetts challenging BOEM's unlawful stop-work order against the Project. The Plaintiffs' Complaint repeatedly relies on that order and the alleged national-security concerns that purportedly justify it. *See* Compl. ¶ 19 ("Th[e] suspension order accords with the evidence cited herein[.]"); *id.* ¶¶ 29–41 (outlining alleged national-security concerns).[4] As this issue is already well under review in the

---

[4] After *in camera* review of the classified materials cited in support of the stop-work orders against Vineyard Wind and similar projects, five district courts—including three in this Circuit—have found these asserted national-security concerns unsubstantiated. *See* Order Granting Pls.' Mot. for

District of Massachusetts, the "related litigation pending in the proposed transferee forum . . . weighs heavily in favor of transfer." *Reiffin*, 104 F. Supp. 2d at 58 (cleaned up); *see also Upjohn Co. v. Gen. Accident Ins. Co.*, 581 F. Supp. 432, 435 (D.D.C. 1984) ("To permit a situation in which two cases involving . . . the same issues are simultaneously pending in different District Courts leads to the wastefulness of tim[e], energy and money that § 1404(a) was designed to prevent." (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))).

The Plaintiffs' claims also "arose" in Massachusetts, further supporting the propriety of transferring this case there. Notwithstanding the Plaintiffs' decision to file elsewhere, "[t]ransfer is . . . proper when 'the material events that constitute the factual predicate for the plaintiff's claims occurred' in the transferee forum." *Niagara Pres. Coal.*, 956 F. Supp. 2d at 104 (quoting *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6–7 (D.D.C. 1996)). As noted above, Vineyard Wind's Project and the Plaintiffs' alleged injuries are all centered in Massachusetts. *See supra* at 7–9; *cf. Trout Unlimited*, 944 F. Supp. at 17 (favoring transfer "where the subject matter of the lawsuit is connected to that state"). Because the actions underlying this case—the approval and operation of Vineyard Wind's Project—occurred in Massachusetts, venue is more appropriate there. *See Seafreeze*, 2022 WL 3906934, at *7–8 (concluding claims challenging the approval of Vineyard Wind's project arose in Massachusetts such that "the third private interest factor weighs in favor of transfer"); *cf. S. Utah Wilderness All.*, 2002 WL 32617198, at *4 (concluding this factor

---

Prelim. Inj., *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999 (D.D.C. Jan. 12, 2026), ECF No. 63; Minute Order Granting Pls.' Mot. for Prelim. Inj., *Empire Leaseholder, LLC v. Burgum*, No. 26-cv-00004 (D.D.C. Jan. 15, 2026); Order Tr. Granting Pls.' Mot. for Prelim. Inj., *Sunrise Wind LLC v. Burgum*, No. 26-cv-00028 (D.D.C. Feb. 3, 2026), ECF No. 38; Order Granting Pls.' Mot. for Prelim. Inj., *Va. Elec. & Power Co. v. U.S. Dep't of Interior*, No. 25-cv-00830 (E.D. Va. Jan. 16, 2026), ECF No. 78; Electronic Order Granting in Part Pls.' Mot. for Prelim. Inj., *Vineyard Wind 1 LLC v. U.S. Dep't of Interior*, No. 26-cv-10156 (D. Mass. Jan. 27, 2026), ECF No. 71.

supported transfer to the District of Utah where "the complained of action, the lease sale of twelve parcels of public land, occurred in Utah").

At bottom, the Plaintiffs' choice of forum is entitled to minimal deference given their lack of ties to this District and the absence of any meaningful factual nexus here. Massachusetts, by contrast, is the clear center of gravity of this dispute: it is the locus of the challenged Project, the alleged injuries, the ongoing litigation challenging the stop-work order, and the Plaintiffs themselves. The first three private-interest factors thus weigh decisively in favor of transfer.

## B.    Private-Interest Factor 4: Convenience of the Parties

The fourth private-interest factor balances the relative convenience of the fora for the parties. "[F]or this factor to weigh in favor of transfer, litigating in the transferee district must not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties." *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48 (D.D.C. 2011). That is precisely the case here.

Given that Vineyard Wind is requesting transfer *to* the Plaintiffs' home district, granting that request would undoubtedly increase convenience for the Plaintiffs. *See Trout Unlimited*, 944 F. Supp. at 18; *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 332 (D.D.C. 2020). Simply put, the Plaintiffs "cannot reasonably claim to be inconvenienced by litigating in [their] home forum." *Aishat v. DHS*, 288 F. Supp. 3d 261, 270 (D.D.C. 2018); *see also Boers v. United States*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) ("Though the plaintiffs wish to litigate in the District of Columbia, it cannot be said that forcing a plaintiff to litigate in his home district will prejudice or burden the plaintiff in any way."). This factor clearly supports transfer as well.

13

**C.     Private-Interest Factors 5 & 6: Convenience of the Witnesses and Access to Evidence**

The final two private-interest factors consider the fora's relative convenience for any witnesses and proximity to the relevant evidence. Because claims brought under the APA and OCSLA are generally limited to review of the administrative record, *see* 5 U.S.C. § 706; *OXY USA Inc. v. Babbitt*, 122 F.3d 251, 256–59 (5th Cir. 1997) (applying the APA's "well-established procedures for administrative and judicial review" to OCSLA claims), these factors usually are afforded "little weight" in determining whether to transfer cases pleading such claims, *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004); *see, e.g.*, *Ctr for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 358 (D.D.C. 2014) ("'[T]he convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer' when the case will be decided on the basis of an administrative record." (quoting *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 56)).

Vineyard Wind, however, intends to pursue discovery as to standing, which *would* implicate the convenience of witnesses—here, the Plaintiffs. *See* Vineyard Wind's Answer at 11, ECF No. 12. For the reasons articulated above, *see supra* at 13, taking that discovery in the District of Massachusetts would also be more convenient for the Plaintiffs in their capacity as witnesses. *See Zhang v. DHS*, 2024 WL 5056357, at *2 (D.D.C. Dec. 10, 2024) (concluding a plaintiff-witness's "home district" was the "better venue" for an APA claim where the plaintiff would be "the key witness and rely on personal records to develop his claim"). So while these factors also may not carry the day on their own, they nonetheless "tilt[ ] toward transfer" too. *Aishat*, 288 F. Supp. 3d at 271.

14

### D.    Public-Interest Factors

The court also must consider three public-interest factors—*viz.*, "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012). Each of these factors supports transfer to Massachusetts.

*First*, the federal approvals of Vineyard Wind's Project have been litigated—and BOEM's stop-work order against the Project is *still* being litigated—in Massachusetts, a fact that weighs decisively toward transfer. Although federal courts are generally presumed to have equal facility in applying federal law, *see, e.g.*, *S. Utah Wilderness All.*, 2002 WL 32617198, at *4, the District of Massachusetts and First Circuit are already familiar with the parties and approvals at issue in this *specific* case. That relative familiarity "supports transfer . . . for judicial efficiency purposes." *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31 (D.D.C. 2008); *see Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 (D.D.C. 2010) (collecting cases).

Again, the District of Massachusetts and First Circuit have already rejected four challenges to the federal approvals of Vineyard Wind's Project. *Melone*, 2023 WL 5002764, *aff'd*, 100 F.4th 21; *Seafreeze*, 2023 WL 6691015 (consolidated action), *aff'd*, 123 F.4th 1, *cert. denied*, 145 S. Ct. 2681; *Nantucket Residents*, 675 F. Supp. 3d 28, *aff'd*, 100 F.4th 1, *cert. denied*, 145 S. Ct. 1050. And Vineyard Wind is currently challenging an unlawful BOEM order in Massachusetts that sought to halt construction of the Project based on alleged harms to national security that Plaintiffs raise and seek to litigate in this Court as well. *See* Electronic Order, *Vineyard Wind 1 LLC*, No. 26-cv-10156 (D. Mass. Jan. 27, 2026), ECF No. 71 (finding Vineyard Wind was substantially likely to succeed on the merits and staying stop-work order). Because the "litigation over the past [several] years, the ongoing . . . proceedings, and this case are all related to [Vineyard Wind's]

15

activities and the regulation thereof, . . . this factor weighs heavily in favor of transfer" to Massachusetts. *Pueblo*, 731 F. Supp. 2d at 41 (citing *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 27 (D.D.C. 2002)); *see also Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("The fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a)." (cleaned up) (citing *In re Scott*, 709 F.2d 717, 721 n.10 (D.C. Cir. 1983))).

*Second*, transfer to the District of Massachusetts would materially advance the efficient resolution of this case. For what it's worth, recent data from the Administrative Office of U.S. Courts do indeed suggest that this Court has a heavier civil docket than the District of Massachusetts.[5] That too favors transfer. *See, e.g.*, *Weiner v. Novartis Pharms. Corp.*, 991 F. Supp. 2d 217, 223–24 (D.D.C. 2013). But the even more compelling efficiency consideration is not statistical, but institutional.

The District of Massachusetts's relative familiarity with these facts and issues would undoubtedly streamline proceedings and conserve judicial resources. *See Cephalon*, 551 F. Supp. 2d at 31 ("[A transferee] court's familiarity with these facts—and the law as applied to these facts—supports transfer . . . for judicial efficiency purposes."); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978) (finding efficiency is improved in venue with greater "familiarity with the allegations, characters, lawyers and previous history of litigation"). Moreover, because this case is still in its "earliest stages," transferring not only would not create any "unnecessary delay," but would allow this Court to clear up its docket before needing to spend time

---

[5] *See* Admin. Off. of U.S. Cts., *U.S. District Courts – Median Time From Filing to Disposition of Civil Cases, by Action Taken*, tbl. C-5 at 1 (Sept. 30, 2025), https://www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf.

"familiariz[ing] itself with the underlying merits of the case." *Trout Unlimited*, 944 F. Supp. at 19. Transfer thus advances efficiency on both ends: no sunk costs here, and no learning curve there.

*Third*, the District of Massachusetts has a powerful local interest in adjudicating this case. The public interest is best served when matters are resolved "within view of people 'whose rights and interests are in fact most vitally affected by the suit.'" *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 57 (quoting *Adams v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)). The "fundamental issue in this case"—BOEM's "authorization of construction" and operation of Vineyard Wind's project—"is a local controversy in the purest sense" that must be adjudicated in the local forum. *Id.* As another court in this District has already recognized, "the impact of the Vineyard Wind project—whether positive or negative—will be felt primarily in Massachusetts and nearby states." *Seafreeze*, 2022 WL 3906934, at *4. The operative Complaint here makes clear that is no less true today. *See* Compl. ¶¶ 8–13 (tying alleged harm of Project exclusively to Massachusetts and its coastal waters).

Accordingly, "the resolution of this action will have its most profound impact on Massachusetts residents who live and work in the area of the proposed construction project." *Seafreeze*, 2022 WL 3906934, at *5 (alterations adopted) (quoting *Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 47 (D.D.C. 2002)). The public interest thus requires that this case "be litigated within the 'view and reach' of the people who will be 'most vitally affected' by its outcome." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 316 (D.D.C. 2015); *see also Wildearth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F. Supp. 2d 51, 55 (D.D.C. 2013) (finding "substantial impacts [of the challenged project] on the local economy" weighed heavily in favor of transfer under this factor). Here, that is the people of the Commonwealth of Massachusetts.

\*    \*    \*

17

Taken together, these factors point decisively toward transfer. The private-interest factors leave little room for doubt: every meaningful factual connection—to the Project, the alleged harms, and the Plaintiffs themselves—lies in Massachusetts. The public-interest factors further reinforce that conclusion. The District of Massachusetts is already deeply familiar with the Project through prior and pending litigation, has a strong local interest in adjudicating a controversy centered on a Project off the Massachusetts coast, and can resolve this case more efficiently without duplicating judicial effort. That the Plaintiffs chose to sue elsewhere is of no moment. The Plaintiffs' selection of this District, one untethered to both their residences and the operative events, should be given virtually no deference, especially since transferring this case to the Plaintiffs' home forum of Massachusetts would be *more* convenient to them.

The weight of the private- and public-interest factors leaves no close call: the District of Massachusetts is the better forum for this case. Therefore, the Court should grant Vineyard Wind's motion and transfer this action accordingly.

## CONCLUSION

For these reasons, Intervenor-Defendant Vineyard Wind 1 LLC respectfully asks this Court to grant the motion to transfer venue and transfer this case to the U.S. District Court for the District of Massachusetts.

Date: June 22, 2026                    Respectfully submitted,

                                       */s/ Peter C. Whitfield*
                                       Peter C. Whitfield (D.C. Bar No. 984225)
                                       Richard W. Smith (D.C. Bar No. 465563)
                                       Matthew Brewer (D.C. Bar No. 493939)
                                       SIDLEY AUSTIN LLP
                                       1501 K STREET, N.W.
                                       WASHINGTON, DC 20005
                                       (202) 736-8000
                                       pwhitfield@sidley.com
                                       rwsmith@sidley.com
                                       mbrewer@sidley.com

                                       Brooklyn Hildebrandt (D.C. Bar No. 888325011)
                                       SIDLEY AUSTIN LLP
                                       350 S. Grand Avenue
                                       Los Angeles, CA 90071
                                       (213) 896-6007
                                       bhildebrandt@sidley.com

                                       *Counsel for Vineyard Wind 1 LLC*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of June 2026, a true and complete copy of the foregoing has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on Plaintiffs' and Defendants' counsel of record via the Court's electronic filing system.

Dated: June 22, 2026

/s/ Peter C. Whitfield
Peter C. Whitfield