**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, INC. *et al.*,<br>*Plaintiffs,*<br>v.<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT *et al.*,<br>*Defendants*,<br>and<br><br>VINEYARD WIND 1 LLC,<br>*Defendant-Intervenor*. | Case No.: 1:26-cv-00070<br>Hon. Tanya S. Chutkan |

**PLAINTIFFS' OPPOSITION TO VINEYARD WIND 1 LLC'S MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

Introduction ........ 1

I. Legal Standard ........ 1

II. The Public and Private Interest Factors Militate in Favor of Plaintiffs' Forum Choice ........ 2

A. Private Interest Factors 1, 2 & 3: The Parties' Choices of Forum and the Locus of the Cause of Action ........ 3

B. Private-Interest Factors 4-6: Convenience of the Parties, Witnesses, and Access to Evidence ........ 9

C. Public-Interest Factors ........ 12

III. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases**

ACK For Whales, Inc. et al v. Bureau Of Ocean Energy Management et al., Minute Order, June 19, 2026, 1:26-cv-00070 .......... 10

Air Line Pilots Ass'n v. E. Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987) .......... 3

Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Review, No. 26-696, 2026 U.S. Dist. LEXIS 50744 at 8 (D.D.C. 2026) .......... 10

Ass'n of Wash. Bus. v. U.S. EPA, No. 23-cv-3605 (DLF), 2024 U.S. Dist. LEXIS 114090 at 15 (D.D.C. June 28, 2024) .......... 2

Greater Yellowstone Coalition v. Kempthorne, 2008 U.S. Dist. LEXIS 33641 at 21 (D.D.C. Apr. 24, 2008) .......... 6

Gross v. Owen, 221 F.2d 94, 95, 95 U.S. App. D.C. 222 (D.C. Cir. 1955) .......... 5

Limnia, Inc. v. United States DOE, 347 F. Supp. 3d 25, 29 (D.D.C. 2018) .......... 11

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) .......... 11

Mashpee Wampanoag Tribe v. Zinke, No. 18-2242 (RMC), 2019 U.S. Dist. LEXIS 104109 at 15 (D.D.C. June 21, 2019) .......... 1

Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) .......... 3

Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70 (D.D.C. 2013) .......... 5

Oceana, Inc. v. Pritzker, 58 F. Supp. 3d 2, 7 (D.D.C. 2013) .......... 9

Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 42 (D.D.C. 2010) .......... 9

Responsible Offshore Development Alliance v. Dep't of Interior, et al., No. 22-cv-237 (CRC) (D.D.C. 2022) .......... 9

Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior, 2022 U.S. Dist. LEXIS 159640 (D.D.C. June 27, 2022) ........ 8

Sierra Club v. EPA, 292 F.3d 895, 900-01 (D.C. Cir. 2002) ........ 11

Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 13 (D.D.C. 2007) ........ 6

Tower Lab'ys, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018) ........ 2

Tuttle v. Jewell, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) ........ 9

Vineyard Wind 1 LLC v. United States Department of the Interior, 1:26-CV-10156-BEM (D. Mass.) ........ 7

WildEarth Guardians v. Zinke, 368 F. Supp. 3d 41, 61 (D.D.C. 2019) ........ 11

**Statutes**

43 U.S.C. § 1337(p)(4) ........ 5

Section 1404(a) ........ 7

**Rules**

Fed. R. Civ. P. 56(d) ........ 11

Fed. R. Civ. P. 26(f) ........ 10

## Introduction

Vineyard Wind 1 LLC (hereinafter, "Vineyard Wind") endeavors to collapse every previous challenge against the project into a single unified controversy, ignoring key differences in claims, administrative records, and Plaintiff composition. Plaintiffs' action, an APA-OCSLA case brought on the basis of newly arisen events since 2023, targets federal agency decisionmaking, including and especially radar, safety, and national security issues, in the context of the proper OCSLA interpretation. As such, this is not merely a local matter tethered to Massachusetts. Moreover, the claims arose in the District of Columbia as that is where the federal decisionmakers approved the Vineyard Wind ROD and COP. No heightened convenience would be afforded to the parties by transferring this matter to the District of Massachusetts given this is an administrative record case, and the D.D.C. is – at minimum – as familiar if not more familiar with these matters. Vineyard Wind's accusation of forum shopping is misplaced. Even assuming this action could have been brought in the District of Massachusetts, Vineyard Wind has not shown that the private and public interest factors overcome Plaintiffs' chosen forum. Plaintiffs filed in a proper APA forum with a substantial federal-agency nexus, while Vineyard Wind seeks transfer to a forum where it has already obtained a favorable ruling in project litigation. For the reasons elaborated upon below, Plaintiffs respectfully request that this Court deny Vineyard Wind's Motion to Transfer.

### I. Legal Standard

Vineyard Wind - the movant - bears the burden of establishing not merely that the action could have been brought in the proposed transferee district, but also that "considerations of convenience and the interest of justice weigh in favor of transfer." <u>Mashpee Wampanoag Tribe v. Zinke</u>, No. 18-2242 (RMC), 2019 U.S. Dist. LEXIS 104109 at 15 (D.D.C. June 21, 2019). Courts examine the following private interest factors which must be balanced:

> "(1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." Id. at 15-16.

And the public interest factors are:

> "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Id. at 16.

It is integral to underscore that deference is owed to Plaintiffs' forum choice, and "[u]nlike a plaintiff's forum preference, a defendant 'is not ordinarily entitled to deference . . . over [a] [p]laintiff's opposition' unless the defendant 'establish[es] that the added convenience and justice of litigating in their chosen forum overcomes the slight deference' afforded to the plaintiff." Ass'n of Wash. Bus. v. U.S. EPA, No. 23-cv-3605 (DLF), 2024 U.S. Dist. LEXIS 114090 at 15 (D.D.C. June 28, 2024) (citing Tower Lab'ys, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018)). And as demonstrated here, Vineyard Wind has not established added convenience and justice of litigating in their chosen forum.

## II. The Public and Private Interest Factors Militate in Favor of Plaintiffs' Forum Choice

The sum total of public and private interest factors militates decisively toward D.D.C. retaining this case. Plaintiffs' choice of forum is D.D.C., and that is rarely disturbed. Vineyard Wind's attempts to demonstrate greater convenience in the District of Massachusetts are unavailing. In an APA case, the epicenter of the action is the district within which the decisionmakers rendered the challenged approvals. Cases which involve administrative records such as this one are resolved via cross motions for summary judgment, and witnesses and

extraneous sources of proof are immaterial. Moreover, as discussed *infra*, contrary to Vineyard Wind's bald assertion that Plaintiffs engaged in forum shopping, Vineyard Wind's attempts to transfer to the District of Massachusetts and relate this case with a pending litigation raise concerns of the very strategic tactic with which they charge Plaintiffs. Finally, the public factors also preponderate toward retaining this case in D.D.C.

### A. Private Interest Factors 1, 2 & 3: The Parties' Choices of Forum and the Locus of the Cause of Action

The first factor, Plaintiffs' choice of forum, militates strongly toward the D.D.C. A "[p]laintiff's choice of forum is given **paramount consideration** and the burden of demonstrating that an action should be transferred is on the movant [emphasis added]. Mashpee Wampanoag Tribe v. Zinke, No. 18-2242 (RMC), 2019 U.S. Dist. LEXIS 104109 at 18 (D.D.C. June 21, 2019) (quoting Air Line Pilots Ass'n v. E. Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987)). Plaintiffs selected a proper and natural forum for an Administrative Procedure Act ("APA") – Outer-Continental Shelf Lands Act ("OCSLA") challenge to federal agency action by BOEM and Department of the Interior, both of which reside in D.D.C.

The degree of deference afforded to Plaintiffs' forum choice is underscored by a nexus between the chosen forum and dispute. Consonant with the instant case, the Plaintiffs in Mashpee Wampanoag Tribe established a nexus between the District of Columbia and the challenged decision because D.C. was where the claim arose. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." Mashpee Wampanoag Tribe v. Zinke, No. 18-2242 (RMC), 2019 U.S. Dist. LEXIS 104109, at 18 (D.D.C. June 21, 2019) (quoting Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009)). In Mashpee Wampanoag Tribe, the pivotal decision subject to Plaintiffs

challenge was the 2018 Record of Decision issued by the Assistant Secretary for Indian Affairs from BIA's national headquarters in D.C. Congruently, here, Plaintiffs lodge an APA-OCSLA challenge to BOEM and Department of the Interior's approval of Vineyard Wind. As such, the challenged decision here was rendered by federal entities in D.C. This creates a powerful nexus between the dispute and forum, especially emphasized given that this is an APA case.

So, notwithstanding the fact that Defendant's choice of forum is the District of Massachusetts, the Plaintiffs' choice of forum – which is afforded significant deference – and the district within which the claims arose is D.C. Analogous to the instant matter, the case could have been brought in Massachusetts, and Defendant-Intervenors in Mashpee Wampanoag Tribe demanded a transfer to the District of Massachusetts because the case allegedly concerned land in Massachusetts. The Defendant-Intervenor further asserted, similar to here, that due to a prior litigation in Massachusetts, the case should be transferred as the "Mashpee are in Massachusetts, Judge Young has 'already waded significantly into the specific legal issue,' and the impact of any decision on the status of the lands, currently held in trust by the United States, will be felt in Massachusetts." Mashpee Wampanoag Tribe v. Zinke, No. 18-2242 (RMC), 2019 U.S. Dist. LEXIS 104109, at 2 (D.D.C. June 21, 2019) The Court therein disagreed with Defendant-Intervenors.

Critically, the Mashpee Wampanoag Tribe Court emphasized that "neither party has claimed that any regional BIA officials, in Massachusetts or elsewhere, were involved in the decisionmaking process." Id. at 19. And moreover, that "The relevant decision and decisionmakers originated in D.C. and the Tribe was within its rights to choose to challenge the 2018 ROD—which was not before Judge Young—in this forum. It did not drag the *Littlefield* Intervenors involuntarily out of Massachusetts." Id. at 20. The Mashpee Wampanoag Tribe Court further noted that

notwithstanding the Tribe's location in Massachusetts and any attendant impact in Massachusetts, the case might also have "national policy implications that exceed the status of a single parcel of land . . . It did not drag the *Littlefield* Intervenors involuntarily out of Massachusetts." Id. at 19-20. Concordantly, here, the relevant decisionmakers are in D.C. and Plaintiffs were entirely within their rights to file suit in D.C., challenging the legality of the Vineyard Wind COP and ROD under the APA-OCSLA.

Additionally, Plaintiffs' claims implicate significant national policy concerns, including the interpretation of OCSLA, 43 U.S.C. § 1337(p)(4), the proper construction of which carries significant ramifications as far as the analysis of offshore wind projects in the context of OCSLA § 1337(p)(4). As such, the adjudication of Plaintiffs' case could also impart broader effects through precedent related to OCSLA and concomitant processing of project applications. This District, in Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70 (D.D.C. 2013) denied the government's motion to transfer from D.C. to Alabama, a case wherein Plaintiffs challenged lease sales approved in D.C. which permitted oil and gas exploration. Id. at 77. Like here, where Plaintiffs invoke a national environmental statute to challenge a project situated on federal lands, on the Outer-Continental Shelf, the Court in Oceana explained that the oil and gas exploration "will take place on the outer continental shelf, beyond the bounds of any state. The plaintiffs allege violations of national environmental statutes." Id. at 77. "The court does not doubt that many Alabamans are acutely interested in the outcome of this case . . . But it cannot fairly say that this is a 'localized controversy' that should fairly be heard in Alabama . . . nor that the connections between the plaintiffs, this case, and this forum are so weak as to deprive the plaintiffs of their prerogative to choose where they will sue." Id. at 78. Indeed, it is "almost a truism that a plaintiff's

choice of a forum will rarely be disturbed." Gross v. Owen, 221 F.2d 94, 95, 95 U.S. App. D.C. 222 (D.C. Cir. 1955).

Another D.D.C. case denied transfer of a challenge to the regulation of recreational snowmobile use in Yellowstone National Park, expounding that "the national scope of the environmental issues at stake defeat Defendants' claim that the connection between Plaintiffs, the controversy and the forum is attenuated." Greater Yellowstone Coalition v. Kempthorne, 2008 U.S. Dist. LEXIS 33641 at 21 (D.D.C. Apr. 24, 2008). See also, Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 13 (D.D.C. 2007) (holding that Endangered Species Act and Clean Water Act alleged violations are national in scope). Again, like here, Plaintiffs' claims implicate environmental issues of national importance, including blade failure, and the proper legal interpretation of OCSLA, particularly in the context of safety, aviation, radar, and national security.

Additionally, like Mashpee Wampanoag Tribe Court, Plaintiffs are not haling Vineyard Wind involuntarily out of Massachusetts. Plaintiffs' case was filed in January of 2026, and Vineyard Wind now seeks to transfer approximately six months subsequent to the commencement of this action (ostensibly for an assumed strategic advantage in the District of Massachusetts), which will likely delay this case's proceedings. The Mashpee Wampanoag Tribe Court underscored that prior litigation invoked by Defendant-Intervenor was related to a different agency decision.[1] Id. at 23. Congruously, Vineyard Wind's attempts to relate Plaintiffs' action with a pending litigation in the District of Massachusetts are unavailing. That pending case (Case No: 1:26-cv-

[1] In fact, in Mashpee Wampanoag Tribe, the Court acknowledged that the Judge in the prior litigation inadvertently decided an issue of statutory construction presented in Mashpee Wampanoag Tribe (Id. at 21-22), yet the Mashpee Wampanoag Tribe Court still denied transfer to Massachusetts. Here, neither prior litigation involving Plaintiffs nor the pending stop-order litigation adjudicated the specific legal allegations presented by Plaintiffs' Complaint in the case at bar.

10156) concerns Vineyard Wind's challenge of BOEM's suspension order halting Vineyard Wind in December 2025. However, that case concerns a completely disparate administrative record, and the challenge focuses on the propriety of the stop-order. Additionally, the parties in that case have been briefing the issue of mootness, as BOEM's stop-order was stayed many months ago. Conversely, Plaintiffs' Complaint here challenges the Vineyard Wind ROD and COP under the APA-OCSLA, an entirely different administrative record, separate and independent to the stop-order in the District of Massachusetts case.

Plaintiffs briefly address Vineyard Wind's misplaced accusation of forum shopping (Br. at 2). The Court in Oceana highlighted the following concern:

> "…[I]f a transfer would mean that the same judge who ruled in favor of the government in the earlier case would also hear this one, then concerns about forum shopping—which implicates the 'systemic integrity' that '[t]he district court . . . must weigh in the balance,' would present themselves. See *Greater Yellowstone*, 180 F. Supp. 2d at 130 ('The plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion [internal citation omitted].'" Oceana, 962 F. Supp. 2d at 78.

Indeed, the Vineyard Wind attempts to relate Plaintiffs' case with the pending litigation, Vineyard Wind 1 LLC v. United States Department of the Interior, 1:26-CV-10156-BEM (D. Mass.), wherein Judge Murphy rendered a ruling in favor of Vineyard Wind, staying BOEM's stop-order of its project. If anything, Vineyard Wind's transfer request raises the same forum-shopping

concern identified in Oceana. Plaintiffs filed in a proper venue with a substantial nexus to the challenged federal agency action, without knowing which judge would be assigned.

Finally, Vineyard Wind further appears to endeavor to collapse every challenge previously filed against the project into one singular controversy. Prior challenges against Vineyard Wind in the District of Massachusetts have no bearing on Plaintiffs' decision to sue Vineyard Wind in the D.D.C., asserting entirely different claims which arose well after Plaintiffs' prior litigation was brought (i.e., including but not limited to, the withdrawal of Solicitor Anderson's M-Opinion and reinstatement of Jorjani's M-Opinion via the Zerzan M-Opinion in May, 2025, and the Vineyard Wind blade failure event in the summer of 2024). Furthermore, Vineyard Wind's attempt to analogize to Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior, 2022 U.S. Dist. LEXIS 159640 (D.D.C. June 27, 2022) is unavailing as that case is distinguishable with the instant case in several material ways.

First, unlike in Seafreeze Shoreside, Inc. where Federal Defendants moved to transfer, here, Federal Defendants take no position on transfer and in fact oppose relation to the pending District of Massachusetts case. Second, in Seafreeze Shoreside, Inc., there were multiple active, prior filed District of Massachusetts cases challenging the same agency actions and same administrative record. Conversely, here, the pending case cited by Vineyard Wind concerns an entirely different agency action – the December 2025 BOEM suspension order – and may even be adjudged as moot. Third, the gravamen of the claims in Seafreeze Shoreside, Inc. concerned fishing, environmental, ecological impacts more closely connected to the local regions, whereas Plaintiffs' Complaint here principally involves claims of broader significance, including radar, national security, aviation, safety, in the context of the proper interpretation of OCSLA, inter alia. And fourth, in Seafreeze Shoreside, Inc., the related litigation was a major determinant because

the multiple District of Massachusetts cases were active and challenged the same approvals, whereas here, transfer would not consolidate active overlapping merits litigation.[2]

### B. Private-Interest Factors 4-6: Convenience of the Parties, Witnesses, and Access to Evidence

Vineyard Wind overstates Plaintiffs' connection to the District of Massachusetts, characterizing it as Plaintiffs "home." Plaintiffs' connections to Massachusetts vary, and in any event, residence is not dispositive in an APA record-review case. The available jurisprudence indicates that the remaining three private interest factors are largely impertinent in APA contexts. "…[T]he convenience of witnesses and the ease of access to sources of proof — are similarly 'not likely to be relevant here' . . . where] th[e] case involves judicial review of an administrative decision . . . and where the case will be decided on the basis of the administrative record, without discovery or in-court testimony [internal citations omitted]." Oceana, Inc. v. Pritzker, 58 F. Supp. 3d 2, 7 (D.D.C. 2013). Indeed, as here, Vineyard Wind cannot aver that the "administrative record would be more accessible in Massachusetts." Id. at 7.

In APA cases, the convenience factors customarily do not militate in either direction. "In an APA case, 'neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis.'" Mashpee Wampanoag Tribe, 2019 U.S. Dist. LEXIS 104109, at 20 (quoting Tuttle v. Jewell, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (quoting Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 42 (D.D.C. 2010))). Indeed, APA cases involve, "judicial review of agency action that is preserved in an administrative record and, under

[2] Note that the Federal Defendants also moved to transfer the significantly overlapping case Responsible Offshore Development Alliance v. Dep't of Interior, et al., No. 22-cv-237 (CRC) (D.D.C. 2022), involving claims by commercial fishermen, "who make their livelihoods fishing in the Vineyard Wind area." Seafreeze Shoreside, Inc., 2022 U.S. Dist. LEXIS 159640 at 3.

the APA, will likely be resolved on summary judgment," and as such, "none of the parties would be inconvenienced by litigating in this district." Mashpee Wampanoag Tribe, 2019 U.S. Dist. LEXIS 104109, at 20-21.

Accordingly, in APA cases such as the one before this Court – an APA-OCSLA challenge – the convenience of parties and access to sources of proof are neutral and do not preponderate in either direction. Since the administrative record is produced electronically, there is no inconvenience to any party in this litigation through D.D.C. retaining the matter. Id. at 21.

Moreover, Vineyard Wind cannot attempt to bootstrap speculative future standing discovery into its argument in support of a transfer factor. At the threshold, the Federal Rules of Civil Procedure provide that APA record-review actions are exempt from the ordinary Rule 26(f) conference requirements and discovery is generally disfavored absent a specific showing. Indeed, this Court, in its recent minute order, underscored same, "The requirements of Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3 appear to be inapplicable in this Administrative Procedure Act case." ACK For Whales, Inc. et al v. Bureau Of Ocean Energy Management et al., Minute Order, June 19, 2026, 1:26-cv-00070.

Vineyard Wind purports that they will endeavor to pursue something which is exceedingly rare in the context of APA cases, indeed, so uncommon that a recent (2026) decision in this District remarked, "The Court cannot recall an occasion in which the government has sought discovery regarding organizational standing in an Administrative Procedure Act ('APA') case like this one." Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Review, No. 26-696, 2026 U.S. Dist. LEXIS 50744 at 8. That Court continued:

> "But even if the government identifies some need for discovery, it is free to raise that need in its opposition to the motion for summary judgment. To do so, Defendants will be required to comply with Rule 56(d), and they will need to 'show[] by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify its opposition,' and they will need to request that the Court 'allow time . . . to take discovery.' Fed. R. Civ. P. 56(d). If Defendants make that showing, the Court will provide them with that opportunity. But before Defendants even attempt to identify a possible dispute that discovery might help resolve, **the Court will not assume that this is one of the very rare APA cases in which jurisdictional discovery is warranted** [emphasis added]." Id. at 8-9.

It is well established that standing related disputes in APA contexts are resolved via summary judgment affidavits or declarations utilized to corroborate standing. Limnia, Inc. v. United States DOE, 347 F. Supp. 3d 25, 29 (D.D.C. 2018) ("discovery is generally disfavored in APA cases"); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion, the plaintiff can no longer rest on 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true."); WildEarth Guardians v. Zinke, 368 F. Supp. 3d 41, 61 (D.D.C. 2019) ("Although judicial review of agency action is typically confined to the administrative record, where there is insufficient evidence of standing in the record . . . plaintiffs may submit extra-record evidence to establish standing"); Sierra Club v. EPA, 292 F.3d 895, 900-01 (D.C. Cir. 2002)

("petitioner may carry its burden of production by citing any record evidence relevant to its claim of standing and, if necessary, appending to its filing additional affidavits or other evidence sufficient to support its claim".).

Thus, it is unequivocally clear that APA cases - including and especially environmental APA cases – typically dispose of standing disputes via affidavit or other evidence attendant summary judgment. Jurisdictional discovery is far from an entitlement in APA litigation. Indeed, discovery requests are only countenanced in exceedingly rare situations, and certainly cannot constitute a "fishing expedition" nor be predicated upon mere "conjecture or speculation." Doe v. OPM, 813 F. Supp. 3d 156, 179 (D.D.C. 2025) (internal citations omitted). It follows that Vineyard Wind cannot invoke a hypothetical future discovery pursuit as if same is a fait accompli, and then use that as a chief fundament to advance its convenience argument. Accordingly, the private interest factors do not militate in favor of a transfer.

**C. Public-Interest Factors**

Nor do the public interest factors counsel in favor of a transfer. First, regarding the transferee's familiarity with the governing laws, if anything, the D.D.C. is more familiar with APA litigation. "The District of Massachusetts has no greater familiarity with the APA and administrative law principles that govern this case. These are issues with which the D.C. Circuit is as familiar, if not more so, than the First Circuit, and which do not materially involve familiarity with the parties." Mashpee Wampanoag Tribe v. Zinke, 2019 U.S. Dist. LEXIS 104109, at 23. As such, here, for a case of which the Administrative Procedure Act forms the fulcrum, it makes little sense to extricate Plaintiffs' case away from the very District within which such matters are routinely handled.

Second, the "District Court in D.C. is less congested than the District of Massachusetts . . . the District of Massachusetts has a 32% higher overall caseload than the District of Columbia . . . the Massachusetts District Court takes more than four times longer to resolve civil cases than does this Court, which has many senior judges." Id. at 23-24. While the statistics in that case are somewhat outdated, recent statistics as of 2025 indicate that the District of Massachusetts has more total filings than D.D.C.[3] At minimum, this factor is neutral, if not counseling slightly in favor of D.D.C.

Finally, as to the third factor, local interest, while Massachusetts has some geographic connection to the project, Plaintiffs' case concerns federal OCSLA duties, radar/national security issues, and concomitant federal agency decisionmaking, giving the dispute national significance rather than merely constrained to local character.

[3] Total filings in D.D.C. for the calendar year 2025 were 4,838, while total filings in D. Massachusetts for 2025 were 5,257: https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Vineyard Wind's Motion to Transfer.

Dated: June 25, 2026

Respectfully submitted,

*/s/ Thomas Stavola Jr. Esq.*
Thomas Stavola Jr. Esq.
*Counsel for Plaintiffs*
DC Bar ID No: 90015331
Law Office of Thomas Stavola Jr. LLC
209 County Road 537
Colts Neck, NJ 07722
tstavolajr@stavolalaw.com
732-539-7244